**Kathrine CODOGAN, Jimmie Perry and James Bickerstaff, Plaintiffs,**

v.

**Kenneth W. FOX, doing business as Central Sandwich Shop, Defendant.**

Civ. No. 67-9-ORL.

United States District Court
M. D. Florida,
Orlando Division.

May 5, 1967.

Norris D. Woolfork, III, Orlando, Fla., for plaintiffs.

Cecil H. Brown, Orlando, Fla., for defendant.

## OPINION

GEORGE C. YOUNG, District Judge.

This case comes on before the Court on the motion of the plaintiffs for a summary judgment. The parties have stipulated to numerous pertinent facts and it is on the basis of that stipulation that the plaintiffs contend they are entitled to a summary judgment.

It is undisputed that the defendant owns and operates a restaurant at 528 West Central Boulevard, Orlando, Florida, which serves food for consumption on the premises and has an inside seating capacity for a small number of patrons. West Central Boulevard is a local city street and not a through highway; the nearest entrance to a federal highway is at least three-fourths of a mile away.

The defendant does not advertise in any form and has not for the past three years had any identification sign of any type on the premises of the restaurant. In addition, the restaurant is not listed in the telephone book.

On the window by the front door to the restaurant there is a sign which reads "We do not serve nor offer to serve interstate travelers"; however, no inquiry is made of customers as to whether they are interstate travelers or not.

The gross purchases of the defendant for use in the restaurant in the year 1966, amounted to approximately $22,000.00, of which an average of from 23% to 30% of monthly purchases moved in interstate commerce. The gross sales for the year amounted to $58,121.31. In addition to the defendant, there are four employees working in the restaurant.

It was stipulated that the defendant has an established policy not to serve Negroes, which has been maintained continuously since the opening of the restaurant.

This action is brought under the Civil Rights Act of 1964, and specifically Section 2000a, of Title 42 United States Code. That Act provides that all persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation * * * without discrimination or segregation on the ground of race, color, religion or national origin. Subsection (b) (2) of Section 2000a provides that any restaurant principally engaged in selling food for consumption on the premises is a place of public accommodation if its operations affect commerce. Subsection (c) of Section 2000a provides that the operations of a restaurant affect commerce if it either (a) serves or offers to serve interstate travelers; or (b) a substantial portion of the food which it serves has moved in commerce.

From the stipulation it is clear that there is no dispute as to the fact that the Central Sandwich Shop is a restaurant principally engaged in selling food for consumption on the premises and is, therefore, a place of public accommodation within the meaning of the Act if its operations affect commerce.

The plaintiffs contend that the case of Newman v. Piggie Park Enterprises, Inc., 256 F.Supp. 941 (D.C.1966), is precedent for concluding in this case as a matter of law that the defendant's restaurant affects commerce on the ground that it serves or offers to serve interstate travelers. This Court cannot agree that the *Newman* case is precedent on that point for in that case the defendant operated five restaurants which were all located on much traveled interstate highways with large signs at and about each location advertising its products; the defendant in that case also advertised for business in daily newspapers and over the radio. In the case at bar, the defendant has not and does not now advertise nor does he have any sign on his place of business indicating the nature of his business, nor is it located near any interstate highway. From the stipulation it cannot be concluded that the defendant offers to serve interstate travelers. The stipulated fact that inquiry is not made of customers as to whether they are interstate travelers or not standing alone is not sufficient to determine as a matter of law that the defendant offers to serve interstate travelers. Therefore, on this point summary judgment could not be granted.

However, there is a remaining criterion for determination as to whether or not the defendant's restaurant affects commerce, which is whether a substantial portion of the food which it serves has moved in commerce.

In the aforesaid *Newman* case, the district judge held that approximately 25% of the foods purchased by the defendant constituted a "substantial" portion of the food having moved in interstate commerce.

In the case at bar, an average of 23% to 30% of the monthly purchases moved in interstate commerce and the issue for

determination by this Court is whether as a matter of law such percentage is a substantial portion within the meaning of the Act.

The transcript of the hearings before the Senate Committee on Commerce, Eighty Eighth Congress, First Session, on S. 1732, sheds light on the Congressional meaning of the word "substantial" as used in Section 2000a(c). In a colloquy between the then Attorney General, Robert Kennedy and Senator Frank J. Lausche, the Senator specifically asked Mr. Kennedy his definition of the word "substantial" as used in the clause under consideration here, and the following occurred, Hearings on S. 1732, supra at 172:

"MR. KENNEDY. More than minimal.

SENATOR LAUSCHE. Wouldn't that practicaly cover everything?

MR. KENNEDY. It's going to cover a great deal."

Again, Mr. Burke Marshall, then Assistant Attorney General, Civil Rights Division, defined the word "substantial" for Senator Lausche and the Committee in the following colloquy, Hearings on S. 1732, supra at 212:

"MR. MARSHALL. I think that by more than minimal or not insignificant, we mean something that is substantial; something, for example, which if done by a whole lot of businesses taken together, has a substantial impact on interstate commerce. Now I think that is true of the activities that are proscribed by this bill. Taken together, without question they have a substantial impact on interstate commerce.

SENATOR LAUSCHE. Well, I am not trying to have you accept my views. I am merely trying to learn the meaning of these terms. The public should then understand that if this bill is passed, the word "substantial," which is used in three of the subparagraphs constituting the conditions, would mean that all proprietary places open to the public would be covered if they did more than a minimum of interstate business?

MR. MARSHALL. That is correct, sir.

Since Congress enacted the legislation using the word "substantial" without limiting its meaning in the Act or by explanation in the Reports, leaving the definition of that word to the explanations made by its sponsor before the Committee, it must be concluded that the word "substantial" as used in the Act, means anything more than a minimal or insignificant amount. Applying that definition to the facts of this case, the percentage of 23% to 30% of purchases having moved in interstate commerce would bring the operations of the restaurant within the definition of one affecting commerce and thereby being a place of public accommodation covered by the Act.

The summary judgment, therefore, should be entered for the plaintiffs and will be filed separately.